```
 1  Stephen Chahn Lee (State Bar: 336435)
 2  slee@stephenleelaw.com
 3  LAW OFFICE OF STEPHEN CHAHN LEE, LLC
 4  209 S. LaSalle Street, Suite 950
 5  Chicago, IL 60604
 6  Telephone: 312-436-1790
```

FILED
CLERK, U.S. DISTRICT COURT
MAY 30 2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___EEE_____ DEPUTY

FEE PAID

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA and
THE STATE OF CALIFORNIA,
ex rel. LINCOLN ANALYTICS, INC.

    Plaintiffs,

    v.

DR. FELICIANO SERRANO, and
FELICIANO SERRANO, M.D., INC.

    Defendants.

Case No.

**LACV23-04178-SB(AGRx)**

COMPLAINT

DEMAND FOR JURY TRIAL

FILED IN CAMERA AND
31 U.S.C. § 3730

1

## I. INTRODUCTION

1. *Qui tam* Plaintiff-Relator Lincoln Analytics, Inc., through its attorney, brings this Complaint on behalf of the United States, and on its own behalf, pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3730 *et seq.*

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a) and (b) over violations of the Federal False Claims Act.

3. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over violations of the California False Claims Act insofar as the claims for such violations are so related to claims in this action for violations of the Federal False Claims Act that they form part of the same case or controversy under Article III of the United States Constitution.

4. The Court has personal jurisdiction over the Defendants because Defendants transact business in this district, can be found in this district, and committed acts within this district that violate 31 U.S.C. § 3729.

5. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because at all times relevant to this Complaint, Defendants regularly conducted substantial business within this district.

## III. PARTIES

6. Relator Lincoln Analytics, Inc. is a company that is incorporated in Delaware and that uses data and investigation to detect health care fraud. Relator has personal knowledge of the facts alleged in this Complaint, based on Relator's analysis of claims data and interviews. Relator is not aware of any "public disclosure" in connection with the false claims alleged in this Complaint, as defined in 31 U.S.C. § 3730(e)(4)(A).

7. Relator qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B) because: (1) prior to any purported public disclosure, Relator voluntarily disclosed to the Government the information on which allegations or transactions in this claim are based, and/or (2) Relator has knowledge which is both direct and independent of any public disclosures to the extent any may exist, and Relator voluntarily provided the information to the Government before filing this action.

8. Defendant Feliciano Serrano is licensed as a physician and surgeon in California. According to information on the Medical Board of California's website, Serrano was issued a license in 2004 and the license expires in March 2024.

9. Defendant Feliciano Serrano, M.D., Inc. is a company that is incorporated in California. According to a statement of information filed in October 2022 with the California Secretary of State, Feliciano Serrano, M.D., Inc.'s principal address is 7305 Pacific Boulevard, Floor 2, Huntington Park, CA, 90255. According to the statement of information, Feliciano Serrano is the CEO, Secretary, Chief Financial Officer, Director, and Agent for Service of Process for Feliciano Serrano, M.D., Inc.

IV. **MEDICARE BACKGROUND**

10. In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program. The Center for Medicare and Medicaid Services ("CMS"), which is part of the Department of Health and Human Services ("HHS"), administers Medicare.

11. Medicare is a health care benefit program within the meaning of Title 18, United States Code, Section 24(b). Medicare provides free or below-cost healthcare benefits to certain eligible beneficiaries, primarily persons sixty-five years of age or older. Individuals who receive Medicare benefits are often referred to as Medicare beneficiaries.

12. Medicare consists of four distinct parts, one of which is relevant here. Part B provides supplementary medical insurance for physician services, outpatient services, and certain home health and preventive services.

13. Centers for Medicare and Medicaid Services, a federal agency within the United States Department of Health and Human Services, administers the Medicare program. CMS contracts with public and private organizations, usually health insurance carriers, to process Medicare claims and perform administrative functions such as paying Part B claims from the Medicare Trust Fund. The Medicare Trust Fund is a reserve of monies provided by the federal government.

14. Enrolled providers of medical services to Medicare recipients are eligible for reimbursement for covered medical services. By becoming a participating provider in Medicare, enrolled providers agree to abide by the rules, regulations, policies, and procedures governing reimbursement, to keep and allow access to records and information as required by Medicare, and to not present or cause to be presented false or fraudulent claims for payment to Medicare.

15. Medicare providers are obligated to understand and certify their compliance with all applicable Medicare laws, regulations, and program instructions as a condition of participation in Part B and as a condition of payment of Medicare reimbursements.

16. To seek payment from Medicare, providers of health care services to Medicare beneficiaries seeking reimbursement under the program must submit a claim, which is a CMS 1500, with certain information regarding the Medicare beneficiary, including the beneficiary's name, health insurance claim number, date the service was rendered, location where the service was rendered, type of services provided, number of services rendered, the procedure code

(described further below), a diagnosis code, charges for each service provided, and a certification that such services were personally rendered by that provider.

17. The American Medical Association has established certain codes to identify medical services and procedures performed by physicians, which are collectively known as the Current Procedural Terminology system. The CPT system provides a national correct coding practice for reporting services performed by physicians and for payment of Medicare claims. CPT codes are widely used and accepted by health care providers and insurers, including Medicare and other health care benefit programs.

18. Given the volume of claims that are submitted to Medicare, Medicare relies on providers to comply with Medicare requirements and trusts providers to submit truthful and accurate certifications and claims. Typically, Medicare pays claims without any review of supporting documentation, including medical records.

V. **MEDI-CAL BACKGROUND**

19. Medi-Cal is California's Medicaid program. Medi-Cal is a public health insurance program that pays for healthcare services for persons who qualify for Medicaid coverage, primarily families with children and people with low income.

20. Medi-Cal is financed and administered by the California Department of Health Care Services and CMS.

21. Before billing Medi-Cal assignments, Defendants, and all providers who submit claims for services provided to Medi-Cal beneficiaries, must certify that they will operate in accordance with the requirements established by the Secretary of the Department of Health and Human Services.

## VI. THE FEDERAL AND STATE FALSE CLAIMS ACTS

22. Under the False Claims Act (31 U.S.C. § 3279 *et seq*.), any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is liable to the United States Government for a civil penalty plus three times the amount of damages which the Government sustained because of such person's acts.

23. Under 31 U.S.C. § 3730(b), any person may bring a civil action for a violation of section 3729 for that person and for the United States government, and such action shall be brought in the name of the United States government.

24. Under the California False Claims Act, Cal. Gov. Code 12651, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" shall be liable to the state for a civil penalty plus three times the amount of damages which the State sustained because of such person's acts.

25. Under Cal. Gov. Code 12652(c), any person may bring a civil action for a violation of the California False Claims Act for that person and for the State of California, and such action shall be brought in the name of the State of California.

## VII. BACKGROUND ON DEFENDANTS

26. Defendant Feliciano Serrano is a Medicare and Medicaid provider whose specialty is nephrology.

27. Based on a review of publicly available Medicare data, Serrano was the highest-paid Medicare provider whose specialty is nephrology in 2016, 2017, 2018, 2019, and 2020. He also had the highest rate of Medicare payments per beneficiary in 2016, 2017, 2018, 2019, and 2020.

28. On information and belief, Dr. Serrano performs vascular procedures on patients, including angiographies, angioplasties, endovascular revascularization, and stent placements. The

main population served by these procedures are patients with kidney problems or who receive dialysis, for whom vascular function is necessary to be able to perform dialysis. These procedures are billed to Medicare under CPT codes 36901, 36902, 36903, 37225, 37229, and 37238. Stent procedures can be billed to Medicare using CPT codes 36901, 36902, and 36903, with 36903 being the code for procedures that are the most complicated and that typically result in the highest payments by Medicare.

## VIII. SUBMISSION OF FALSE CLAIMS

29. As described in more detail below, on information and belief, Defendants Feliciano Serrano and Feliciano Serrano, M.D., Inc. have submitted false claims to Medicare for procedures that were medically unnecessary.

### A. Medically Unnecessary Stent and Vascular Procedures

30. According to a review of Medicare data, Dr. Serrano was one of the highest paid Medicare providers for vascular access HCPCS codes 36901, 36902 and 36903 from 2017 through 2019. The following figure compares Dr. Serrano's billing for these codes from 2017 through 2019 compared to all other providers. Dr. Serrano billed $5.9 million for these codes over 3 years, which is 30 times the average. The following figure compares total billing for these codes; Dr. Serrano is an extreme outlier.



31.    According to a review of Medicare data, from 2017 through 2019 Serrano billed Medicare for more stent procedures under HCPCS Code 36903 per beneficiary than his peers. In each of years 2017, 2018, and 2019, he had the highest number of services per beneficiary of all providers. He did so by billing multiple procedures per patient, while other providers typically bill for about 1 procedure per patient. The following figure compares 36903 services per beneficiary bills by Dr. Serrano in 2017, 2018 and 2019 to all other providers. Dr Serrano is an extreme outlier.



32. According to a review of Medicare data, Dr. Serrano billed more patients at the highest level of service for vascular procedures than his peers. Of the codes 36901, 36902, and 36903, the latter code is the most intensive and expensive. Dr. Serrano billed a higher number of his patients at the highest code than his peers, compared to other providers who billed many of these services. The following figure compares the share of patients billed at the 36903 level of service from 2017 through 2019. Dr. Serrano is an extreme outlier.



33. Dr. Serrano similarly billed vascular codes 37238 for vascular stent procedures from 2014 through 2016, and codes 37225 and 37229 for vascular procedures from 2019 through 2021, more than his peers.

34. As a result of such billing, Defendants received approximately $17.55 million for such vascular procedures, significantly more than other Medicare providers who have identified nephrology as their specialty.

35. As a result of such billing, Defendants also received an unknown sum from Medicaid, which pays a share of outpatient services (copays) for patients enrolled in both Medicare and Medicaid.

36. On information and belief, Serrano made false representations to patients about the vascular procedures that Defendants billed to Medicare and Medicaid by telling them that the vascular procedures would address medical conditions which the vascular procedures would not do.

37. On information and belief, many of the vascular procedures that were billed by Defendants to Medicare and Medicaid were not medically necessary, and the corresponding claims were accordingly improper and false.

38. On information and belief, Serrano performed multiple vascular procedures that Defendants billed to Medicare and Medicaid when only one or two such procedures would be appropriate.

39. On information and belief, Defendants falsely billed Medicare and Medicaid for vascular procedures that Serrano did not actually render.

40. On information and belief, Defendants also falsely billed Medicare and Medicaid for procedures in the name of Serrano when the services were actually rendered by a nurse when Serrano was not present and was not immediately available to provide assistance.

## IX.   FIRST CAUSE OF ACTION

41. Relator repeats and realleges the preceding paragraphs as if fully set forth herein.

42. All Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to the United States of America for payment or approval false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(A), including claims for medically unnecessary vascular procedures.

43. As a result of Defendants' actions, as set forth above, the United States of America has been, and may continue to be, damaged.

## X.   SECOND CAUSE OF ACTION

44. All Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

presented or caused to be presented, and may still be presenting or causing to be presented, to the State of California for payment or approval false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(A), including claims for medically unnecessary vascular procedures.

45. As a result of Defendants' actions, as set forth above, the State of California has been, and may continue to be, damaged.

## XI. PRAYER FOR RELIEF

46. WHEREFORE, *Qui Tam* Plaintiff, Lincoln Analytics, Inc., for the United States, and for itself, prays as follows and request:

   a. That the Court enter judgment against the Defendants in an amount to be determined at trial, equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

   b. That in the event the United States Government intervenes in this action, Lincoln Analytics, Inc. be awarded 25% of the proceeds of the action or the settlement of any such claim;

   c. That in the event the United States Government does not proceed with this action, Lincoln Analytics, Inc. be awarded 30% of the proceeds of this action or the settlement of any such claim;

47. WHEREFORE, *Qui Tam* Plaintiff, Lincoln Analytics, Inc., for the State of California, and for itself, prays as follows and request:

      a. That the Court enter judgment against the Defendants in an amount to be determined at trial, equal to three times the amount of damages the State of California has sustained because of Defendants' actions, plus a civil penalty for each action in violation of Cal. Gov. Code 12651, and the costs of this action, with interest, including the costs to the State of California for its expenses related to this action;

      b. That in the event the State of California intervenes in this action, Lincoln Analytics, Inc. be awarded at least 15 percent but not more than 33 percent of the proceeds of the action or the settlement of any such claim;

      c. That in the event the State of California does not proceed with this action, Lincoln Analytics, Inc. be awarded at least 25 percent but not more than 50 percent of the proceeds of this action or the settlement of any such claim;

48. That the Court award an alternate remedy or other such other relief as is appropriate.

49. That Lincoln Analytics, Inc. be awarded all costs, attorneys' fees, and litigation expenses of this action.

50. That the United States Government, the State of California, and Lincoln Analytics, Inc. receive any and all other relief, both at law and in equity, to which they may reasonably appear entitled.

## XII. JURY DEMAND

51. Pursuant to Federal Rule of Civil Procedure 38(d), Relator demands a trial by jury for all claims and issues so triable.

Dated: May 30, 2023                    Respectfully submitted,

                                            LAW OFFICE OF STEPHEN CHAHN LEE, LLC
                                            209 S. LaSalle St, Suite 950
                                            Chicago, IL, 60604
                                            Tel:  312-436-1790

                                   By:    /s/ Stephen Chahn Lee
                                             STEPHEN CHAHN LEE
                                             State Bar No. 336435
                                             E-mail: slee@stephenleelaw.com

                                             Attorney for Relator