1   Stephen Chahn Lee (State Bar: 336435)
2   slee@stephenleelaw.com
3   LAW OFFICE OF STEPHEN CHAHN LEE, LLC
4   209 S. LaSalle Street, Suite 950
5   Chicago, IL 60604
6   Telephone: 312-436-1790
7

8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA and
11  THE STATE OF CALIFORNIA,              Case No.: 2:23-cv-04178-HDV-AGR
12  ex rel. LINCOLN ANALYTICS, INC.
13
14            Plaintiffs,                 FIRST AMENDED COMPLAINT
15
16        v.                              DEMAND FOR JURY TRIAL
17
18  DR. FELICIANO SERRANO, and
19  FELICIANO SERRANO, M.D., INC.
20
21            Defendants.

1

## I.    <u>INTRODUCTION</u>

1.    *Qui tam* Plaintiff-Relator Lincoln Analytics, Inc., through its attorney, brings this Complaint on behalf of the United States and the State of California, and on its own behalf, pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3730 *et seq*.

## II.    <u>JURISDICTION AND VENUE</u>

2.    This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a) and (b)over violations of the Federal False Claims Act.

3.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over violations of the California False Claims Act insofar as the claims for such violations are so related to claims in this action for violations of the Federal False Claims Act that they form part of the same case or controversy under Article III of the United States Constitution.

4.    The Court has personal jurisdiction over the Defendants because Defendants transact business in this district, can be found in this district, and committed acts within this district that violate 31 U.S.C. § 3729.

5.    Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because at all times relevant to this Complaint, Defendants regularly conducted substantial business within this district.

III.    **PARTIES**

6.    Relator Lincoln Analytics, Inc. is a company that is incorporated in Delaware and that uses data and investigation to detect health care fraud.  Relator has personal knowledge of the facts alleged in this Complaint, based on Relator's analysis of claims data and interviews.  Relator is not aware of any "public disclosure" in connection with the false claims alleged in this Complaint, as defined in 31 U.S.C. § 3730(e)(4)(A).

7.    Relator qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B) because: (1) prior to any purported public disclosure, Relator voluntarily disclosed to the Government the information on which allegations or transactions in this claim are based, and/or (2) Relator has knowledge which is both direct and independent of any public disclosures to the extent any may exist, and Relator voluntarily provided the information to the Government before filing this action.

8.    In particular, prior to filing the original complaint in this matter, Relator's representatives interviewed people associated with Defendants, including a licensed practical nurse (LPN) who worked for Defendants in 2020 and who was interviewed once on May 11, 2023 and a second time on May 16, 2023.  When first called by telephone on May 11, 2023, the LPN asked Relator's representative if Defendant Dr. Serrano was being investigated and said, "Working there was really

1    bad.  I'm happy to help because a lot of people are being ripped off and I don't think

2    what they're doing is even legal."   The LPN said that she was not involved in

3    Defendants' stent procedures but assisted patients with their recovery phase and that

4    she spoke with patients while helping them with their recovery.  The LPN said that

5    many patients received stent procedures because Defendant Dr. Serrano was

6    providing false information about how the stent procedures would benefit them.

7    "There's a lot of bad things about that place.  I'm glad I'm talking to someone," the

8    LPN said.

9         9.      Defendant Dr. Feliciano Serrano is licensed as a physician and surgeon

10   in California.   According to information on the Medical Board of California's

11   website, Defendant Dr. Serrano was issued a license in 2004 and the license expires

12   in March 2024.  Defendant Dr. Serrano has been an enrolled provider with Medicare

13   since 2006.

14        10.     Defendant Feliciano Serrano, M.D., Inc. is a company that is

15   incorporated in California.   According to a statement of information filed in October

16   2022 with the California Secretary of State, Feliciano Serrano, M.D., Inc.'s principal

17   address is 7305 Pacific Boulevard, Floor 2, Huntington Park, CA, 90255.  According

18   to the statement of information, Feliciano Serrano is the CEO, Secretary, Chief

19   Financial Officer, Director, and Agent for Service of Process for Feliciano Serrano,

20   M.D., Inc.

1    IV.    **MEDICARE BACKGROUND**

2        11.    In 1965, Congress enacted Title XVIII of the Social Security Act, 42

3    U.S.C. § 1395 *et seq*., known as the Medicare program. The Center for Medicare

4    and Medicaid Services ("CMS"), which is part of the Department of Health and

5    Human Services ("HHS"), administers Medicare.

6        12.    Medicare is a health care benefit program within the meaning of Title

7    18, United States Code, Section 24(b).   Medicare provides free or below-cost

8    healthcare benefits to certain eligible beneficiaries, primarily persons sixty-five

9    years of age or older.  Individuals who receive Medicare benefits are often referred

10    to as Medicare beneficiaries.

11        13.    Medicare consists of four distinct parts, one of which is relevant here.

12    Part B provides supplementary medical insurance for physician services, outpatient

13    services, and certain home health and preventive services.

14        14.    Centers for Medicare and Medicaid Services, a federal agency within

15    the United States Department of Health and Human Services, administers the

16    Medicare program.  CMS contracts with public and private organizations, usually

17    health insurance carriers, to process Medicare claims and perform administrative

18    functions such as paying Part B claims from the Medicare Trust Fund.  The Medicare

19    Trust Fund is a reserve of monies provided by the federal government.

1      15.    Enrolled providers of medical services to Medicare recipients are

2    eligible for reimbursement for covered medical services.    By becoming a

3    participating provider in Medicare, enrolled providers agree to abide by the rules,

4    regulations, policies, and procedures governing reimbursement, to keep and allow

5    access to records and information as required by Medicare, and to not present or

6    cause to be presented false or fraudulent claims for payment to Medicare.

7      16.    Medicare providers are obligated to understand and certify their

8    compliance with all applicable Medicare laws, regulations, and program instructions

9    as a condition of participation in Part B and as a condition of payment of Medicare

10   reimbursements.

11     17.    Medicare does not cover items and services which are "not reasonable

12   and necessary for the diagnosis or treatment of illness or injury or to improve the

13   functioning of a malformed body member," as stated in Medicare Benefit Policy

14   Manual, Chapter 16, Section 20.

15     18.    To seek payment from Medicare, providers of health care services to

16   Medicare beneficiaries seeking reimbursement under the program must submit a

17   claim, which is a CMS 1500, with certain information regarding the Medicare

18   beneficiary, including the beneficiary's name, health insurance claim number, date

19   the service was rendered, location where the service was rendered, type of services

20   provided, number of services rendered, the procedure code (described further

6

1  below), a diagnosis code, charges for each service provided, and a certification that

2  such services were personally rendered by that provider.

3      19.    The American Medical Association has established certain codes to

4  identify medical services and procedures performed by physicians, which are

5  collectively known as the Current Procedural Terminology system.  The CPT system

6  provides a national correct coding practice for reporting services performed by

7  physicians and for payment of Medicare claims.  CPT codes are widely used and

8  accepted by health care providers and insurers, including Medicare and other health

9  care benefit programs.

10     20.    Given the volume of claims that are submitted to Medicare, Medicare

11 relies on providers to comply with Medicare requirements and trusts providers to

12 submit truthful and accurate certifications and claims.  Typically, Medicare pays

13 claims without any review of supporting documentation, including medical records.

14     21.    By submitting a claim to Medicare for a service, a provider certifies or

15 states that the service was rendered and was medically necessary.

16 V.    **MEDI-CAL BACKGROUND**

17     22.    Medi-Cal is California's Medicaid program.  Medi-Cal is a public

18 health insurance program that pays for healthcare services for persons who qualify

19 for Medicaid coverage, primarily families with children and people with low

20 income.

1    23.    Medi-Cal is financed and administered by the California Department of

2    Health Care Services and CMS.

3    24.    Before billing Medi-Cal assignments, Defendants, and all providers

4    who submit claims for services provided to Medi-Cal beneficiaries, must certify that

5    they will operate in accordance with the requirements established by the Secretary

6    of the Department of Health and Human Services.

7    **VI.    THE FEDERAL AND STATE FALSE CLAIMS ACTS**

8    25.    Under the False Claims Act (31 U.S.C. § 3279 *et seq*.), any person who

9    "knowingly presents, or causes to be presented, a false or fraudulent claim for

10    payment or approval" is liable to the United States Government for a civil penalty

11    plus three times the amount of damages which the Government sustained because of

12    such person's acts.

13    26.    Under 31 U.S.C. § 3730(b), any person may bring a civil action for a

14    violation of section 3729 for that person and for the United States government, and

15    such action shall be brought in the name of the United States government.

16    27.    Under the California False Claims Act, Cal. Gov. Code 12651, any

17    person who "knowingly presents, or causes to be presented, a false or fraudulent

18    claim for payment or approval" shall be liable to the state for a civil penalty plus

19    three times the amount of damages which the State sustained because of such

20    person's acts.

28.    Under Cal. Gov. Code 12652(c), any person may bring a civil action for a violation of the California False Claims Act for that person and for the State of California, and such action shall be brought in the name of the State of California.

## VII.    BACKGROUND ON DEFENDANTS

29.    Defendant Feliciano Serrano is a Medicare and Medicaid provider whose specialty is nephrology.

30.    Based on a review of publicly available Medicare data, Serrano was the highest-paid Medicare provider whose specialty is nephrology in 2016, 2017, 2018, 2019, and 2020.  He also had the highest rate of Medicare payments per beneficiary in 2016, 2017, 2018, 2019, and 2020.

31.    On information and belief, Dr. Serrano performs vascular procedures on patients, including angiographies, angioplasties, endovascular revascularization, and stent placements. The main population served by these procedures are patients with kidney problems or who receive dialysis, for whom vascular function is necessary to be able to perform dialysis.  These procedures are billed to Medicare under CPT codes 36901, 36902, 36903, 37225, 37229, and 37238.  Stent procedures can be billed to Medicare using CPT codes 36901, 36902, and 36903, with 36903 being the code for procedures that are the most complicated and that typically result in the highest payments by Medicare.

32.    In October 2018, Defendant Dr. Serrano entered into a Stipulated Settlement and Disciplinary Order with the Medical Board of California in which he agreed that the Medical Board of California could establish a prima facie case for the charges in First Amended Accusation No. 800-2014-007881, which was served on Defendant Dr. Serrano on August 22, 2017.  Those charges alleged that Defendant Dr. Serrano committed "gross negligence" and "repeated negligent acts" with regards to one patient, Josefina Y., because he "perform[ed] nearly identical procedures on the same patient on multiple occasions with no documented clinical benefit, and without adequately documenting the justification therefor."  According to the charges, Defendant Dr. Serrano performed vascular surgery procedures (angioplasty and stent placements) five times on Josefina Y. in a five-month period between March 2015 and July 2015 as well as another vascular surgery procedure in February 2016.

33.    In October 2022, Defendant Dr. Serrano entered into a Stipulated Settlement and Disciplinary Order with the Medical Board of California in which he agreed that the Medical Board of California could establish a prima facie case for the charges in First Amended Accusation No. 800-2018-049600.  Those charges alleged that Defendant Dr. Serrano committed "grossly negligent acts," including "scheduling and performing routine preemptive fistulagrams without clinical indication."  The charges related to a specific patient on whom Defendant Dr.

1  Serrano performed "unnecessary" fistulagrams and placed stents "on a regular

2  basis," according to the California Medical Board.

3  **VIII.  <u>SUBMISSION OF FALSE CLAIMS</u>**

4      34.    As described in more detail below, on information and belief,

5  Defendants Feliciano Serrano and Feliciano Serrano, M.D., Inc. have submitted false

6  claims to Medicare for procedures that were medically unnecessary, in particular,

7  dialysis circuit interventions such as the insertion or placement of stents in dialysis

8  segments.

9      35.    In 2019, the National Kidney Foundation's Kidney Disease Outcomes

10  Quality Initiative published the 2019 update to the KDOQI Clinical Practice

11  Guideline for Vascular Access, which was intended to assist multidisciplinary

12  practitioners care for chronic kidney disease patients and their vascular access.  The

13  Guidelines recognize that arteriovenous interventions are "often necessary to

14  facilitate an [arteriovenous] access for it to be useful for dialysis and/or to maintain

15  its patency and use," but "unnecessary interventions can lead to reductions in patient

16  quality (eg, discomfort/pain, inconvenience) and increased costs to the healthcare

17  system."  For arteriovenous access, the Guidelines recommend the following:

18          Intervention goal = "1-2-3" interventions as follows:

19          1.  For each AV access creation

20          2.  There should be ≤2 interventions to facilitate AV access use

1          3.  There should be ≤3 interventions to maintain AV access use

2             per year

3      As described more below, Defendants have submitted claims to Medicare for

4  exccessive numbers of interventions on patients, including more than 13 in a single

5  year for one Medicare patient (Patient 1).

6      36.    According to a review of Medicare data, Dr. Serrano was one of the

7  highest paid Medicare providers for vascular access HCPCS codes 36901, 36902

8  and 36903 from 2017 through 2019.  The following figure compares Dr. Serrano's

9  billing for these codes from 2017 through 2019 compared to all other providers. Dr.

10  Serrano billed $5.9 million for these codes over 3 years, which is 30 times the

11  average.  The following figure compares total billing for these codes; Dr. Serrano is

12  an extreme outlier.



1

2          37.    According to a review of Medicare data, from 2017 through 2019

3   Serrano billed Medicare for more stent procedures under HCPCS Code 36903 per

4   beneficiary than his peers.  In each of years 2017, 2018, and 2019, he had the highest

5   number of services per beneficiary of all providers.  He did so by billing multiple

6   procedures per patient, while other providers typically bill for about 1 procedure per

7   patient.  The following figure compares 36903 services per beneficiary bills by Dr.

8   Serrano in 2017, 2018 and 2019 to all other providers.  Dr Serrano is an extreme

9   outlier.



1

2        38.    According to a review of Medicare data, Dr. Serrano billed more

3 patients at the highest level of service for vascular procedures than his peers. Of the

4 codes 36901, 36902, and 36903, the latter code is the most intensive and expensive.

5 Dr. Serrano billed a higher number of his patients at the highest code than his peers,

6 compared to other providers who billed many of these services. The following figure

7 compares the share of patients billed at the 36903 level of service from 2017 through

8 2019. Dr. Serrano is an extreme outlier.



1

2          39.    On one single patient (Patient 2), Defendants billed Medicare for eight

3   36903 stent procedures in a 10-month period, including two procedures that were

4   done just days apart in March 2017 and two more procedures that were done just

5   days apart in May 2017.  Overall, Defendants performed an excessive number of

6   unnecessary stent procedures on Patient 2.  The table below summarizes the dates

7   and procedures regarding Patient 2:

| Service Date | Procedure Code | Procedure Description | Amt Paid |
|---|---|---|---|
| 3/3/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 3/6/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |

| Service Date | Procedure Code | Procedure Description | Amt Paid |
|---|---|---|---|
| 5/3/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 5/8/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 7/6/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 8/8/2017 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 9/12/17 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |
| 11/9/17 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,955.96 |

40.     On another single patient (Patient 1), Defendants billed Medicare for four 36903 stent procedures in 2018 as well as nine 36906 procedures that year, as well as five more 36903 stent procedures in 2019.  Four of these stent procedures occurred in a single month – March 2018.  Overall, Defendants performed an excessive number of unnecessary stent procedures on Patient 1, including four stents in a two-week period in March 2018.  The table below summarizes the dates and procedures regarding Patient 1:

| Service Date | Procedure Code | Procedure Description | Amt Paid |
|---|---|---|---|
| 2/16/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 3/14/2018 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $5,090.27 |
| 3/16/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 3/21/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 3/28/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 5/18/2018 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $5,090.27 |
| 5/30/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 6/4/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 7/12/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |

| Service Date | Procedure Code | Procedure Description | Amt Paid |
|---|---|---|---|
| 8/8/2018 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $5,090.27 |
| 10/10/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 10/15/2018 | 36906 | Removal and/or dissolving of blood clot in hemodialysis circuit and balloon dilation of dialysis segment and placement of stent with review by radiologist | $6,164.22 |
| 12/17/2018 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $5,090.27 |
| 1/16/2019 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,128.23 |
| 4/15/2019 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,824.23 |
| 4/22/2019 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,824.23 |
| 5/8/2019 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,824.23 |
| 5/20/2019 | 36903 | Insertion of needle and/or tube into hemodialysis circuit and insertion of stent in dialysis segment with review by radiologist | $4,824.23 |

1

1      41.    Defendants submitted claims for these procedures for Patient 1 and

2    Patient 2, as well as similar claims for other patients, knowing that the procedures

3    were medically unnecessary and thus ineligible for billing, or with reckless disregard

4    or deliberate ignorance of the truth as to the medical necessity of the procedures.

5    Notably, Defendants submitted many of these claims after Defendant Dr. Serrano

6    was served with an accusation by the Medical Board of California on August 22,

7    2017 that he had engaged in gross negligence by committing repeated negligent acts,

8    including performing "nearly identical procedures on the same patient on multiple

9    occasions with no documented clinical benefit."

10    42.    As a result of such billing, Defendants received approximately $17.55

11    million for such vascular procedures, significantly more than other Medicare

12    providers who have identified nephrology as their specialty.

13    43.    As a result of such billing, Defendants also received an unknown sum

14    from Medicaid, which pays a share of outpatient services (copays) for patients

15    enrolled in both Medicare and Medicaid.

16    44.    Defendant Dr. Serrano made false representations to patients about the

17    vascular procedures that Defendants billed to Medicare and Medicaid by telling

18    them that the vascular procedures would address medical conditions which the

19    vascular procedures would not do.

45.     Many of the vascular procedures that were billed by Defendants to
Medicare and Medicaid were not medically necessary, and the corresponding claims
were accordingly improper and false insofar as Defendants certified or stated that
the claims were medically necessary, including (1) a 36903 claim for Patient 2 with
a date of service of March 6, 2017, which was submitted to Medicare on or about
March 14, 2017, (2) a 36903 claim for Patient 2 with a date of service of May 8,
2017, which was submitted to Medicare on or about May 10, 2017, (3) a 36903 claim
for Patient 1 with a date of service of March 14, 2018, which was submitted to
Medicare on or about April 24, 2018, and (4) a 36906 claim for Patient 1 with a date
of service of March 16, 2018, which was submitted to Medicare on or about April
24, 2018.

46.     Defendant Dr. Serrano performed multiple vascular procedures that
Defendants billed to Medicare and Medicaid when only one or two such procedures
would be appropriate.

## IX.    FIRST CAUSE OF ACTION

47.     Relator repeats and realleges the preceding paragraphs as if fully set
forth herein.

48.     All Defendants, in reckless disregard or deliberate ignorance of the
truth or falsity of the information involved, or with actual knowledge of the falsity
of the information, knowingly presented or caused to be presented to the United

1   States of America for payment or approval false or fraudulent claims, in violation of

2   31 U.S.C. § 3729(a)(1)(A), including claims for medically unnecessary vascular

3   procedures, including the following claims:

4           a.  A 36903 claim for Patient 2 with a date of service of March 6,

5                2017, which was submitted to Medicare on or about March 14,

6                2017

7           b.  A 36903 claim for Patient 2 with a date of service of May 8,

8                2017, which was submitted to Medicare on or about May 10,

9                2017

10          c.  A 36903 claim for Patient 1 with a date of service of March 14,

11               2018, which was submitted to Medicare on or about April 24,

12               2018

13          d.  A 36906 claim for Patient 1 with a date of service of March 16,

14               2018, which was submitted to Medicare on or about April 24,

15               2018.

16      49.  As a result of Defendants' actions, as set forth above, the United States

17  of America has been damaged.

18  **X.  <u>SECOND CAUSE OF ACTION</u>**

19      50.  All Defendants, in reckless disregard or deliberate ignorance of the

20  truth or falsity of the information involved, or with actual knowledge of the falsity

1    of the information, knowingly presented or caused to be presented to the State of

2    California for payment or approval false or fraudulent claims, in violation of Cal.

3    Gov. Code 12651, including claims for medically unnecessary vascular procedures.

4         51.    As a result of Defendants' actions, as set forth above, the State of

5    California has been damaged.

6    **XI.    <u>PRAYER FOR RELIEF</u>**

7         52.    WHEREFORE, *Qui Tam* Plaintiff, Lincoln Analytics, Inc., for the

8    United States, and for itself, prays as follows and request:

9                              a.  That the Court enter judgment against the Defendants in

10                                an amount to be determined at trial, equal to three times

11                                the amount of damages the United States Government has

12                                sustained because of Defendants' actions, plus a civil

13                                penalty for each action in violation of 31 U.S.C. § 3729,

14                                and the costs of this action, with interest, including the

15                                costs to the United States Government for its expenses

16                                related to this action;

17                              b.  That in the event the United States Government

18                                intervenes in this action, Lincoln Analytics, Inc. be

19                                awarded 25% of the proceeds of the action or the

20                                settlement of any such claim;

22

1       53.     That in the event the United States Government does not proceed with

2    this action, Lincoln Analytics, Inc. be awarded 30% of the proceeds of this action or

3    the settlement of any such claim;

4       54.     WHEREFORE, *Qui Tam* Plaintiff, Lincoln Analytics, Inc., for the State

5    of California, and for itself, prays as follows and request:

6              a.  That the Court enter judgment against the Defendants in

7                   an amount to be determined at trial, equal to three times

8                   the amount of damages the State of California has

9                   sustained because of Defendants' actions, plus a civil

10                penalty for each action in violation of Cal. Gov. Code

11                12651, and the costs of this action, with interest,

12                including the costs to the State of California for its

13                expenses related to this action;

14              b.  That in the event the State of California intervenes in this

15                action, Lincoln Analytics, Inc. be awarded at least 15

16                percent but not more than 33 percent of the proceeds of

17                the action or the settlement of any such claim;

18       55.     That in the event the State of California does not proceed with this

19    action, Lincoln Analytics, Inc. be awarded at least 25 percent but not more than 50

20    percent of the proceeds of this action or the settlement of any such claim;

1    56.    That the Court award an alternate remedy or other such other relief as

2    is appropriate.

3    57.    That Lincoln Analytics, Inc. be awarded all costs, attorneys' fees, and

4    litigation expenses of this action.

5    58.    That the United States Government, the State of California, and Lincoln

6    Analytics, Inc. receive any and all other relief, both at law and in equity, to which

7    they may reasonably appear entitled.

8    **XII.    <u>JURY DEMAND</u>**

9    59.    Pursuant to Federal Rule of Civil Procedure 38(d), Relator demands a

10    trial by jury for all claims and issues so triable.

11    Dated: September 29, 2025            Respectfully submitted,

12                                         LAW OFFICE OF STEPHEN CHAHN LEE,
13                                             LLC
14                                         209 S. LaSalle St, Suite 950
15                                         Chicago, IL, 60604
16                                         Tel:  312-436-1790
17
18                            By:    /s/ Stephen Chahn Lee
19                                   STEPHEN CHAHN LEE
20                                   State Bar No. 336435
21                                   E-mail: slee@stephenleelaw.com
22
23                                   Attorney for Relator